## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| KARL STORZ ENDOSCOPY-AMERICA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:12-CV-2716-KOB |
| | ) | |
| INTEGRATED MEDICAL SYSTEMS INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on "Defendant's Motion to Dismiss First Amended Complaint and Initial Memorandum in Support of Motion." (Doc. 64). For the reasons stated below, this court WILL GRANT IN PART and DENY IN PART Defendant's motion to dismiss this case.

Plaintiff Karl Storz Endoscopy-America Inc., a medical device manufacturer, filed its original complaint against Defendant Integrated Medical Systems International, Inc., a direct competitor, in August 2012. (Doc. 1). In October 2012, the parties jointly moved to stay the proceedings until resolution of the United States Patent and Trademark Office's *inter partes* reexamination of the patents at issue in this case. (Doc. 12).

The USPTO concluded its reexamination and reissue proceedings in October 2018 by confirming all the claims in one of KSEA's patents and reissuing KSEA's other patent, though with several amendments and eighteen additional claims. (Doc. 55). Plaintiff KSEA subsequently moved for leave to amend its original complaint. (Doc. 58). This court granted Plaintiff's motion, and Plaintiff filed its amended complaint on November 20, 2018, alleging

additional and continuing violations between its original and amended complaints. Defendant

filed a motion to dismiss Plaintiff's amended complaint, (doc. 64), and a motion to stay all

discovery until this court ruled on the motion to dismiss, (doc. 65). The court granted

Defendant's motion to stay and now addresses Defendant's motion to dismiss. (Doc. 73).

For the reasons stated below, the court WILL GRANT IN PART and WILL DENY IN

PART Defendant's motion to dismiss and WILL LIFT the stay in this case.

## I. Factual Background

Plaintiff Karl Storz Endoscopy-America, Inc. manufacturers and sells medical products,

including endoscopes. Defendant Integrated Medical Systems International, Inc. repairs and

resells medical products, including endoscopes. As an endoscope reseller, Defendant IMS

directly competes with Plaintiff KSEA's endoscope business.

KSEA filed a method[1] patent application for assembling endoscopes with the United

States Patent and Trademark Office on August 18, 2005. (Doc. 63-1 at 2).

Sometime in 2007, KSEA obtained an allegedly IMS-repaired endoscope that it believed

violated its then-pending patent application. (Doc. 63 at ¶ 11). KSEA contacted IMS regarding

its alleged infringement on March 12, 2009; IMS denied any violation but refused to certify in

writing that it did not perform the steps of KSEA's then-pending method patent.

KSEA filed a machine[2] patent application for an endoscope with the USPTO on March

30, 2009. (Doc. 63-1 at 11).

Pursuant to KSEA's 2005 patent application, the USPTO issued KSEA U.S. Patent No.

7,530,945 (the '945 patent) on May 12, 2009. (Doc. 63 at ¶ 7). The '945 patent constitutes a

---

[1] A method, also called a "process," is "a mode of treatment of certain materials to produce a certain result." 60 Am. Jur. 2d *Patents* § 70 (2019).

[2] A machine "is a concrete thing, consisting of parts, or of certain devices and combination of devices. A machine includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain result or effect. 60 Am. Jur. 2d *Patents* § 71 (2019).

method patent, with claim 1 providing a "method for assembling an endoscope having a tubular shaft [containing] an optical system having several components . . . at least partially surrounded by a tube made of both a transparent and a shrunk material." (Doc. 63-1 at 9).

In December 2010, KSEA filed a prior lawsuit in this court alleging infringement of the '945 claim against IMS. *See* Complaint, Karl Storz GMBH & Co. KG v. Integrated Med. Sys. Int'l, Inc., 2:10-CV-3547-AKK (N.D. Ala. Dec. 21, 2010), ECF No. 1. Judge Kallon dismissed that lawsuit on June 30, 2011, reasoning that "the allegations [] permit the court to infer only the mere *possibility* of infringement." *Karl Storz Gmbh & Co. KG v. Integrated Med. Sys. Int'l, Inc.*, No. 2:10-CV-3547-AKK, 2011 WL 13134015, at *3 (N.D. Ala. June 30, 2011).

The USPTO issued KSEA's second patent, U.S. Patent No. 8,029,437 (the '437 patent), on October 4, 2011. (Doc. 63-1 at 11). The '437 patent constitutes a machine patent, with claim 1 describing an endoscope comprising "a tubular shaft [containing] an optical system having several components . . . directly surrounded by a support piece made of a shrunk material, wherein said shrunk material is a transparent material." (Doc. 1-2 at 9).

In December 2011, KSEA obtained two IMS-repaired endoscopes it believed infringed or evidenced infringement of the '945 method patent and the '437 machine patent. (Doc. 63 at ¶¶ 12–13).

KSEA filed the original complaint in this action on August 15, 2012, alleging patent infringement against IMS. (Doc. 1). The complaint incorporated photographs of all three IMS-repaired endoscopes to support its infringement claims. IMS responded by requesting *inter partes* patent reexamination by the USPTO in September 2012. (Doc. 7). Pending resolution of the reexamination proceedings, the court stayed this case. (Doc. 13).

The USPTO denied reexamination for all claims of the '945 patent and for claims 1–7 of the '437 patent, but it ordered reexamination for claims 8–14 of the '437 patent. (Doc. 63 at ¶ 22). After amendments during reexamination, the USPTO ultimately confirmed the patentability of claims 8–14 of the '437 patent. (Doc. 63 at ¶ 23).

Pursuant to KSEA's reissue application filed in June 2013, the USPTO reissued the '437 patent as U.S. Patent No. RE47,044 (the '044 patent) on September 28, 2018, adding claims 15–32. (Doc. 63-1 at 2).

The court subsequently lifted the stay and gave KSEA leave to file an amended complaint. (Doc. 62). In its amended complaint, KSEA alleges that it discovered two more IMS-repaired endoscopes that infringed KSEA's patents, one in 2013 and one in 2016. (Doc. 63 at ¶¶ 14–15).

IMS now moves to dismiss KSEA's amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 64). The court stayed discovery in this matter pending the resolution of IMS's motion to dismiss. (Doc. 73).

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint states a facially plausible claim for relief

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

The court accepts all factual allegations as true on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678.

## III. Discussion

Defendant IMS's motion to dismiss presents several arguments for dismissing Plaintiff KSEA's infringement claims. The motion presents arguments for dismissing (1) KSEA's claims related to the '945 patent and claims 1–14 of the '044 patent; (2) KSEA's claims related to claims 15–32 of the '044 patent; (3) KSEA's claims under the doctrine of equivalents as to both patents; and (4) KSEA's claims of induced and willful infringement. This Memorandum Opinion addresses each in turn.

### A. '945 Patent and Claims 1–14 of the '044 Patent

IMS makes three distinct arguments for the dismissal of KSEA's claims related to the '945 patent and claims 1–14 of the '044 patent.

#### 1. Judge Kallon's 2011 Order of Dismissal

IMS's first argument is that this court's dismissal of a prior action between the parties supports dismissal of this case. In KSEA's first lawsuit against IMS, with Judge Kallon presiding, IMS similarly moved to dismiss for failure to state a claim. Judge Kallon granted IMS's motion to dismiss, concluding KSEA's allegations "permit[ted] the court to infer only the mere *possibility* of infringement," because the only allegedly infringing incident occurred in 2007, two years before the issuance of KSEA's patent. *Karl Storz Gmbh & Co. KG v. Integrated*

*Med. Sys. Int'l, Inc.*, No. 2:10-CV-3547-AKK, 2011 WL 13134015, at *3 (N.D. Ala. June 30, 2011). With evidence of only one allegedly infringing endoscope, discovered *before* KSEA had obtained its patent, Judge Kallon declined to infer infringing activity *after* KSEA obtained its patent. *Id.*

KSEA filed its second lawsuit against IMS in this court on August 15, 2012. This complaint included the same allegations, as well as two additional alleged infringements, both discovered in December 2011. (Doc. 1 at ¶¶ 13–14). After *inter partes* reexamination by the USPTO, KSEA amended the complaint to include two more alleged infringements, which KSEA alleges it discovered in 2013 and 2016. (Doc. 63 at ¶ 15–16).

Despite these additional factual allegations, IMS asks the court to apply Judge Kallon's analysis to KSEA's amended complaint. But as this court understands Judge Kallon's Memorandum Opinion, Judge Kallon dismissed KSEA's first lawsuit because its single allegation of infringement happened before the patent office issued KSEA's patent. While this one incident of alleged infringement stated a *possible* claim of continued infringement, Judge Kallon concluded that it did not state a *plausible* one.

But the same deficiency does not plague KSEA's amended complaint now before this court because KSEA alleges it discovered four different infringing endoscopes since the USPTO first issued the patent claims at issue. If KSEA proves that even one of these four endoscopes violated its patents, then it would have a viable claim for relief. So unlike the complaint before Judge Kallon, this complaint does not require the court make any inferences to conclude that KSEA has plausibly stated a claim of infringement of the '945 patent and claims 1–14 of the '044 patent.

So the court WILL DENY Defendant's motion to dismiss based on the argument that

Judge Kallon's prior ruling mandates dismissal of this action.

### 2. KSEA's Method Patent Infringement Claims

IMS next argues that KSEA's complaint relies too heavily on conclusory allegations to

have plausibly pled its method patent infringement claim. (Doc. 64 at 19–20). KSEA's complaint

alleges "on information and belief" that IMS performed every step of the '945 patent, its method

patent. (Doc. 63 at ¶ 28). IMS argues the court should disregard KSEA's conclusory allegations

as insufficient to support a reasonable inference of infringement.

 In response, KSEA argues that its allegations and photographs sufficiently allege its

method claim and cites 35 U.S.C. § 295 for the proposition that the court can "presume" from its

allegations and photographs that IMS used KSEA's method claims when it repaired the

endoscopes at issue. (Doc. 74 at 10 n. 4).

But § 295, which allows a court to shift "the burden of establishing that the product was

not made by the [patented] process," requires the court to make factual findings in the plaintiff's

favor. *See* 35 U.S.C. § 295(1)–(2). Because the court makes no factual determinations when

testing the sufficiency of a complaint, it questions the appropriateness of applying that

presumption at this stage of litigation. *See Dr. Greens, Inc. v. Stephens*, No. 3:11-cv-638-JAH,

2012 WL 12846976, at *10 (S.D. Cal. Mar. 21, 2012) ("[T]he Court agrees with Plaintiff that the

presumption does not apply when deciding a motion to dismiss for failure to state a claim . . . .").

Operating without the presumption, the court must decide if KSEA's allegations "on

information and belief," combined with photographs of the repaired endoscopes, plausibly allege

that IMS performed every step of KSEA's patented method. As IMS argues, the court is not

*required* to accept conclusory allegations made "on information and belief." *Mann v. Palmer*,

713 F.3d 1306, 1315 (11th Cir. 2013). But the court *may* draw reasonable inferences for the

plaintiff when it pleads factual content sufficient for the court to do so. *See Ashcroft v. Iqbal*, 556

U.S. at 678.

KSEA includes photographic evidence of allegedly IMS-repaired endoscopes and asserts

that the photographs support its allegations that IMS repaired the endoscopes using KSEA's

patented method. IMS's motion specifically identifies two steps of KSEA's method it believes

the photographs do not plausibly establish:

> [I]t cannot be determined from the photographs whether the tube was transparent before
> it was shrunken, as step a) of claim 1 of the '945 patent requires . . . [and] one cannot
> determine from the photographs whether IMS performs step c) of claim 1, which requires
> "checking a position of said components relative to one another through said transparent
> shrunk material."

(Doc. 64 at 19).

The court agrees that it cannot "determine" such details about IMS's process from the

pictures alone, but it disagrees that this inability warrants dismissal. At this stage, KSEA must

only *plausibly* allege the elements of its claim and provide factual content sufficient for the court

to draw reasonable inferences in its favor, when necessary. Here, KSEA's pictures show

endoscopes with sections clear enough for someone to check the position of components relative

to one another. (Doc. 63 at ¶¶ 12–13, 15, 17; Doc. 63-1 at 26–30, 33–34).[3] IMS would apparently

have this court adopt the alternative explanation that, when it repaired the endoscopes at issue, it

used an opaque material that becomes see-through upon being shrunken, or that after shrinking

the see-through material it declined to check the position of the components relative to one

another. But the court does not find either alternative explanation "obvious." The Eleventh

Circuit has noted that "courts may infer from the factual allegations in the complaint 'obvious

---

[3] The parties dispute the meaning and importance of the word "transparent," as used in KSEA's patent. As discussed
in more detail below, the court declines to resolve that dispute at the motion for dismissal stage.

alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)). This court instead draws the reasonable inference that the material looked the same both before and after IMS shrunk it, and that IMS capitalized on the obvious advantage of being able to visually inspect the components through the material after shrinking it.

IMS does not identify any other steps of KSEA's method patent as insufficiently pled, so the court WILL DENY Defendant's motion to dismiss based on the argument that Plaintiff failed to sufficiently plead infringement of its method patent claims.

### 3. Scope of KSEA's Patents

IMS alternatively argues that this court should dismiss KSEA's claims because its patent does not plausibly cover IMS's allegedly infringing endoscopes. (Doc. 64 at 18–19). The root of IMS's argument is that KSEA's patents require *transparent* material to be shrunk around an endoscope's internal components, but the allegedly infringing endoscopes use black material, through which one cannot visually inspect the internal components.

The court does not agree with IMS's contention that the material used to repair the endoscopes is black and opaque. KSEA's complaint includes pictures that, at a minimum, establish the ability of light to pass through the material such that one could at least plausibly inspect the positions of internal components. (Doc. 63-1 at 26–30, 33–34). But IMS correctly asserts that KSEA's patent claims at issue require a *transparent* tube. (Doc. 63-1 at 9, 18–19). So, if the IMS-repaired endoscopes do not include tubes that are "transparent," as KSEA's patents use the term, then the endoscopes would not constitute infringement.

9

The court concludes that making a determination of whether the IMS-repaired endoscopes include "transparent" material, as described in KSEA's patents, would require this court to engage in claim construction, which would be premature without a *Markman* hearing or more evidentiary material. *Nalco Co. v. Chem–Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018) ("But Defendant's arguments boil down to objections to [Plaintiff's] proposed claim construction . . . , a dispute not suitable for resolution on a motion to dismiss."). As KSEA argues, its patents could conceivably use the word transparent to mean only that one can "perform a visual check" of the internal components. (Doc. 74 at 14). The court by no means commits itself to such a claim construction, but it similarly cannot commit itself to the claim construction IMS offers, which would exclude the allegedly infringing endoscopes.

IMS contends that KSEA's own arguments in front of the patent trial and appeal board, as well as the board's decision, militate against adopting the definition of transparent KSEA now proffers. But the Federal Circuit Court has indicated that district courts should not attempt to interpret statements made during reexamination proceedings at the dismissal stage. *Nalco*, 883 F.3d at 1349 ("Resolution of that dispute, even if part of the [reexamination] record [] can be considered, is particularly inappropriate in the Rule 12(b)(6) context.").

Because the court declines to resolve at this juncture the parties' dispute about the meaning of "transparent," it WILL DENY IMS's motion to dismiss the parts of Counts I and II that include KSEA's direct infringement claims related to the '945 patent and claims 1–14 of the '044 patent.

*B. Claims 15–32 of the '044 Patent*

Defendant IMS separately argues for the dismissal of KSEA's infringement claims as to claims 15–32 of the '044 patent. IMS raises two independent grounds for dismissal: (1) claims

15–32 issued in September 2018, two years after KSEA last discovered an allegedly infringing

endoscope; and (2) the patent trial and appeal board's decision forecloses the possibility that

claims 15–32 cover the IMS-repaired endoscopes. (Doc. 64 at 21–22). Because the court finds

IMS's first ground persuasive, it declines to discuss the second ground for dismissal.

IMS argues that KSEA fails to plausibly allege infringement of claims 15–32 because

KSEA discovered the IMS-repaired endoscopes on which its infringement claims rely between

2007 and 2016—before the USPTO issued those patent claims.

KSEA construes IMS's motion as arguing for the existence of intervening rights.[4] KSEA

argues that because intervening rights constitute affirmative defenses, which IMS failed to plead,

the court should disregard the argument altogether. (Doc. 74 at 11 n. 7).

But IMS's motion does not rely on its potential intervening rights. Instead, liability for

infringing claims 15–32 of patent '044 could not attach to any actions taken before the USPTO

issued those claims. *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed.

Cir. 1996) ("Patent rights are created only upon the formal issuance of the patent . . . ."). So, to

survive dismissal, KSEA's complaint must plausibly allege that IMS has infringed claims 15–32

*since September 2018*. KSEA argues that the "only reasonable inference is that IMS continues to

use the same process it has used since 2007, as evidence [sic] by IMS' endoscopes from 2007,

2011, 2013, and 2016." (Doc. 74 at 11 n. 7).

The court disagrees. The court need not make every inference in a plaintiff's favor when

"obvious alternative explanations" exist. *See Am. Dental Ass'n*, 605 F.3d at 1290. Considering

these parties have been litigating this issue since 2009, the court notes that at least one obvious

alternative explanation exists: IMS could have adjusted its processes and products to avoid future

---

[4] Intervening rights under 35 U.S.C. § 252 protect potential infringers from patent liability for actions made "prior to the grant of a reissue."

infringement of KSEA's patent (or to avoid future litigation for behavior and products KSEA believes infringes its patents). Without the inference that KSEA's processes remain unchanged since 2016 and that it continues to produce infringing endoscopes, KSEA's complaint establishes that IMS has *possibly* infringed claims 15–32 of the '044 patent, but it fails to clear the threshold of establishing IMS *plausibly* infringed those claims.

So the court WILL GRANT IMS's motion to dismiss Count II only as it relates to claims 15–32 of the '044 patent and WILL DISMISS WITHOUT PREJUDICE KSEA's claims of literal infringement as they relate to claims 15–32 of the '044 patent.

### C. Doctrine of Equivalents

In addition to its claims for literal infringement, KSEA's complaint also alleges that "Defendant at least infringes on [Plaintiff's patents] under the doctrine of equivalents." (Doc. 63 at ¶¶ 27, 35). "Under the doctrine of equivalents, a product or process that does not literally infringe the express terms of a patent claim nonetheless may be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention." 60 Am. Jur. 2d *Doctrine of equivalents* § 709 (2019).

IMS's motion does not extensively address KSEA's claims under the doctrine of equivalents; its motion mentions KSEA's doctrine of equivalents claims twice and calls KSEA's allegations conclusory. (*See* Doc. 64 at 13, 17). In response, KSEA argues that its doctrine of equivalents claims alone "preclude[] dismissal at the pleading stage," because the doctrine "presents an issue of fact that cannot be resolved at the pleading stage." (Doc. 74 at 18). IMS's reply brief elaborates on its motion and construes KSEA's doctrine of equivalents claims as formulaic recitations of the claims' elements, with "no factual allegations showing how the elements of these tests are met." (Doc. 76 at 22–23).

As an initial matter, the court does not need to address KSEA's doctrine of equivalents claims related to the '945 patent or claims 1–14 of the '044 patent, because the court determined KSEA's claims for direct infringement plausibly pled infringement. *See Auburn Univ. v. Int'l Bus. Machs., Corp*, 864 F. Supp. 2d 1222, 1225 (M.D. Ala. 2012) (noting "that a claim under the doctrine of equivalents can be brought through an allegation of direct infringement").

As to claims 15–32 of the '044 patent, KSEA's doctrine of equivalents claims suffer from the same pitfalls as its literal infringement claims. That is, even if each IMS-repaired endoscope *would have* violated claims 15–32 under a doctrine of equivalents theory, those patent rights did not exist until after the USPTO reissued the patent and thus *after* IMS repaired the endoscopes. As discussed above, the court declines to infer that IMS continues to produce allegedly equivalent products, even if IMS did so previously. So the court WILL GRANT IMS's motion to dismiss Count II as it relates to KSEA's doctrine of equivalents claims on claims 15–32 of the '044 patent and WILL DISMISS WITHOUT PREJUDICE KSEA's doctrine of equivalents claims on claims 15–32 of the '044 patent.

*D. KSEA's Claims of Induced and Willful Infringement*

Finally, IMS moves to dismiss KSEA's claims of induced infringement in Count II and willful infringement in Counts I and II, arguing KSEA's complaint fails to adequately plead either claim.

1. Induced infringement of the '044 patent

IMS's first argument for dismissing KSEA's claim that IMS induced infringement of the '044 patent is that such a claim cannot exist in the absence of direct infringement. (Doc. 64 at 23) (citing *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004)).

Because the court will deny IMS's motion to dismiss KSEA's direct infringement claim as to claims 1–14 of the '044 patent, it declines to apply that argument to claims 1–14.

As to claims 15–32 of the '044 patent, the court agrees that an induced infringement claim cannot survive dismissal in the absence of plausible allegations that IMS or anyone else directly infringed those patent claims. *See Limelight Networks, Inc. v. Akamai Tech., Inc.*, 572 U.S. 915, 925 (2014) ("[T]he nature of the rights created by the Patent Act defeats the notion that Congress could have intended to permit inducement liability where there is no underlying direct infringement."). The court already concluded that KSEA's complaint fails to plausibly allege that IMS or anyone else directly infringed claims 15–32 of the '044 patent, so the court WILL GRANT IMS's motion to dismiss KSEA's induced infringement claim as to claims 15–32 of the '044 patent in Count II.

IMS's second argument for dismissing KSEA's claim of induced infringement of claims 1–14 of the '044 patent is that KSEA failed to allege "that IMS specifically intended that a third party should infringe and that IMS knew that such third-party's acts constituted direct infringement." (Doc. 64 at 24).

Induced infringement claims require a plaintiff to show "that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). IMS does not dispute its knowledge of KSEA's patents but argues KSEA's complaint fails to plead that IMS knowingly induced third parties to commit acts it specifically intended to violate KSEA's patent.

An inducement claim requires infringing conduct by at least one third party, but "a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an

14

inference that at least one direct infringer exists." *In re Bill of Lading Transmission &*

*Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) (emphasis in original).

KSEA's complaint alleges that IMS "re-introduced [KSEA's endoscopes] into the stream of

commerce," thereby plausibly alleging that at least one third party acquired and directly

infringed KSEA's patent. Further, because IMS knew that claims 1–14 of the '044 patent existed

and would have also known that introducing infringing products into the stream of commerce

would lead to third-party infringement, the court disagrees that KSEA's complaint fails to

plausibly allege intent.

So the court WILL DENY IMS's motion to dismiss KSEA's induced infringement claim

as to claims 1–14 of the '044 patent but WILL GRANT IMS's motion to dismiss the induced

infringement claim as to claims 15–32 of the '044 patent in Count II.

### 2. Willful infringement

IMS similarly argues KSEA's claims of willful infringement fail for lack of factual

allegations establishing willfulness. When a defendant willfully infringes a patent, a plaintiff

may be entitled to recover enhanced damages. 35 U.S.C. § 284. The United States Supreme

Court has "limit[ed] the award of enhanced damages to egregious cases of misconduct beyond

typical infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016). The

Court provided that such a determination of egregiousness requires courts "to take into account

the particular circumstances of each case." *Id.* at 1933.

Though not mandatory, trial courts may use the so-called *Read* factors to consider

whether a defendant's infringement is egregious. *Georgetown Rail Equip. Co. v. Holland L.P.*,

867 F.3d 1229, 1244 (Fed. Cir. 2017) (describing the *Read* factors as "non-exclusive"); *see also*

*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992). The non-exclusive *Read* factors

include, among others, (1) whether the infringer deliberately copied the patent; (2) the duration of defendant's misconduct; and (3) any remedial action by the defendant. *Read*, 970 F.2d at 827. The court can hardly make a determination of the egregiousness of IMS's conduct at the dismissal stage, so it instead merely looks to KSEA's complaint for factual allegations sufficient to plausibly demonstrate subjective willfulness.

Here, after discovering an IMS-repaired endoscope it believed would violate its patent, KSEA alleges it notified IMS of its then-pending patent application on March 12, 2009. KSEA alleges to have discovered two more infringing IMS-repaired endoscopes in December 2011, and it filed this lawsuit on April 15, 2012. Since then, while the USPTO reexamined and reissued KSEA's patents, IMS allegedly infringed KSEA's patent at least two more times, once in 2013 and once in 2016. If proven, such repeated infringements over a seven-year period in the midst of ongoing litigation and patent reexamination proceedings would evidence deliberateness, duration, and a total lack of remedial behavior. So the court concludes that KSEA's complaint at least plausibly alleges conduct that could give rise to enhanced damages for willful infringement.

The court WILL DENY IMS's motion to dismiss KSEA's willful infringement claims in Counts I and II of its amended complaint.

**IV. Conclusion**

For the reasons stated above, the court WILL GRANT IN PART and DENY IN PART Defendant's motion to dismiss. The court WILL GRANT Defendant's motion to dismiss Plaintiff's claims related to claims 15–32 of the '044 patent and WILL DISMISS WITHOUT PREJUDICE Count II of the amended complaint as it relates to those patent claims. The court WILL DENY Defendant's motion to dismiss all other claims in Plaintiff's complaint. Having

resolved the motion to dismiss such that some claims survive, the court WILL LIFT the stay in this case.

   **DONE** and **ORDERED** this 11th day of July, 2019.

             _____

             **KARON OWEN BOWDRE**
             CHIEF UNITED STATES DISTRICT JUDGE